**COZEN O'CONNOR**
BY:    Melanie A. Miller (MM 2992)
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, PA  19103
(215) 665-2714- Telephone
(215) 701-2414 – Facsimile
mmiller@cozen.com – E-Mail

Attorneys for Plaintiff
Celgene Corporation

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **Celgene Corporation,** | : |
| | : |
| | : |
| **Plaintiff,** | : |
| | :    Civil Action No.: _____ |
| **v.** | : |
| | : |
| **Global Care RX,** | :    <u>**JURY TRIAL DEMANDED**</u> |
| | : |
| | : |
| **Defendant.** | : |

## <u>COMPLAINT</u>

Plaintiff, Celgene Corporation ("Celgene"), by and through its undersigned attorneys, for its complaint against Global Care RX ("Defendant") alleges as follows:

### <u>Parties</u>

1.     Plaintiff Celgene is a Delaware corporation with a place of business at 86 Morris Avenue, Summit, New Jersey 07901.

2.     Defendant Global Care RX is a Canadian corporation with a principal place of business at 7-B Pleasant Blvd, Suite 1083, Toronto, ON, Canada, M4T 1K2 with an email address at info@globalcarerx.com and a facsimile number at (888) 886-5803.

## Jurisdiction and Venue

3.      This action arises under the Acts of Congress under the Trademark and Lanham

Acts, Title 15 U.S.C. §§ 1051, 1125, *et seq.*, and common law.  As such, this Court has subject

matter jurisdiction under the provisions of Title 28 U.S.C. §§ 1331 and 1338 because this action

involves federal questions of law.  A substantial part of the events giving rise to this action have

occurred and continue to occur in this judicial district.  As such, the Defendant should reasonably

expect that its activities might have consequences herein.

4.      This Court has original jurisdiction over the claims brought under federal law

pursuant to 28 U.S.C. §§ 1331 and 1338(b) and 15 U.S.C. § 1121.

5.      This court has supplemental jurisdiction over the claims brought under the

common law pursuant to 28 U.S.C. § 1338(b) and § 1367(a).

6.      The Defendant is subject to this Court's personal jurisdiction because:  (1) it does

substantial business in this district; and (2) it regularly solicits business from, does business with,

and derives revenue from goods and/or services provided to customers in this district.

7.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) in that

a substantial part of the events or omissions giving rise to the claim occurred in the District of

New Jersey and pursuant to 28 U.S.C. § 1391(c)(2) given that Defendant is subject to this court's

personal jurisdiction.

## Background as to Celgene's Business and Its Intellectual Property

8.      Celgene is a global biopharmaceutical company which is the owner of all

proprietary rights in and to the drug POMALYST®, which is a drug utilized in the treatment of

multiple myeloma.  POMALYST® is a prescription medicine, taken along with the medicine

dexamethasone, used to treat people with multiple myeloma who: 1) have received at least 2

prior medicines to treat multiple myeloma, including a type of medicine known as a proteasome

inhibitor and unauthorized POMALYST®, and 2) their disease has become worse during

treatment or within 60 days of finishing the last treatment. The active ingredient in POMALYST® is called pomalidomide.

9.      The POMALYST® drug is approved by the Food and Drug Administration ("FDA"), and Health Canada, subject to restricted distribution, and is currently available in the marketplace in the United States and Canada. The FDA has approved POMALYST®, which is taken orally, for previously treated multiple myeloma. Health Canada has similarly approved POMALYST®.

10.     Because of the potential toxicity of POMALYST®, and in an effort to minimize the chance of fetal exposure to POMALYST®, POMALYST® is approved for marketing only under a special restricted distribution program approved by the FDA and Health Canada. This program is called POMALYST REMS® in the United States and RevAid® in Canada. Under these restricted distribution programs, only prescribers and pharmacists registered with the programs are allowed to prescribe and dispense POMALYST®. In addition, patients must be advised of, agree to, and comply with the requirements of the POMALYST REMS® and RevAid® programs in order to receive POMALYST®.

11.     Celgene is the owner of all trademark rights in and to the POMALYST® mark throughout the world, including the following registrations in the United States and Canada:

- U.S. Reg. No. 4,388,257 for POMALYST covering "pharmaceutical preparations for the treatment of certain cancers and blood diseases" in International Class 5;

- U.S. Reg. No. 4,388,257 for POMALYST covering "pharmaceutical preparations, namely, cytokine inhibitory drugs; pharmaceutical preparations that modulate the immune system" in International Class 5;

- U.S. Reg. No. 3,980,998 for POMALYST covering "pharmaceutical preparations, namely, cytokine inhibitory drugs; pharmaceutical preparations that modulate the immune system" in International Class 5;

- U.S. Reg. No. 3,980,998 for POMALYST covering "pharmaceutical preparations for the treatment of certain cancers and blood diseases and printed dosage instructional manuals sold together as a unit" in International Class 5; and

3

- Canadian Reg. No. 1594307 for POMALYST covering "pharmaceutical preparations, namely, cytokine inhibitory drugs; pharmaceutical preparations that modulate the immune system" in International Class 5.

12.     Celgene's U.S. Reg. No. 4,388,257 for POMALYST has acquired incontestable status. 15 U.S.C. §1065.  Thus, the registration for this mark shall be conclusive evidence of the validity of the registered mark, of Celgene's ownership of the mark, and of Celgene's exclusive right to use the registered mark in commerce in connection with the pharmaceuticals specified in the affidavits filed under the provisions of 15 U.S.C. § 1065 and/or the renewal applications filed under the provisions of 15 U.S.C. § 1059.

13.     Celgene has expended significant time, energy and resources in the protection and promotion of its POMALYST® brand throughout the world.

14.     The effectiveness of the POMALYST® drug, an immunomodulatory agent for previously treated patients with multiple myeloma, has delivered results in terms of treatment, and has resulted in significant commercial success.

15.     Through Celgene's use of the POMALYST® marks in connection with the drug, POMALYST® has become associated in the minds of the public with Celgene.

16.     Celgene's POMALYST® marks are strong, is inherently distinctive, and represents the exceedingly valuable goodwill of Celgene.

**Background as to the Defendant' Unlawful Conduct**

17.     Defendant Global Care RX is a company that sells numerous branded and generic drugs to consumers throughout the United States.

18.     Defendant solicits business throughout the United States, and sells drugs, including POMALYST® paclitaxel products to consumers in the District of New Jersey and to consumers throughout the United States.

19.     Defendant owns and operates the website located at www.GlobalCareRX.com.

20.    Since at least as early as June 2017, Defendant has been using the POMALYST® mark without authorization from Celgene, and has been advertising, selling, and/or distributing unauthorized POMALYST® to consumers in the United States, including consumers in the District of New Jersey.

21.    Celgene, through its counsel, sent correspondence to Defendant, via facsimile at (888) 886-5803 and email at info@GlobalCareRX.com, on June 19 and October 30, 2017 requesting that the Defendant cease and desist from all use of the POMALYST® mark in connection with the sale of POMALYST®, and cease all unauthorized advertising, sale and distribution of unauthorized POMALYST® to consumers in the United States.

22.    Defendant did not respond to any of the aforementioned cease and desist correspondences from Celgene.

23.    Despite being informed of Celgene's trademark rights, the Defendant continues to willfully utilize the POMALYST® mark without Celgene's and Abraxis' authorization on the suprememed.com website in connection with the advertisement and sale of POMALYST®.

24.    Despite being informed of the consumer health and safety risks inherent in the unauthorized sale of POMALYST® outside of the limited distribution channels, the Defendant continues to willfully advertise, sell, and distribute unauthorized POMALYST® to consumers in the United States.

25.    Defendant is not a Celgene-approved specialty pharmacy under the limited distribution program for POMALYST® in the United States or elsewhere.

26.    Defendant is selling, distributing, and dispensing unauthorized POMALYST® outside of limited distribution channels and to patients who do not have prescriptions for this drug.

27.     Defendant's distribution of unauthorized POMALYST® outside of the limited distribution channels creates serious health and safety risks for consumers, and could result in serious health consequences for consumers.

28.     The POMALYST® drug offered for sale by Defendant is not manufactured by Celgene.

29.     Celgene is not associated with Defendant and does not have any relationship with Defendant.

30.     Defendant has not received authorization, nor obtained a license, from Celgene to use Celgene's POMALYST® mark or to sell or distribute unauthorized POMALYST® in the United States.  Similarly, Celgene has not acquiesced to Defendant's use of the POMALYST® mark or to Defendant's sale and distribution of unauthorized POMALYST® to customers in the United States.

31.     Defendant's unauthorized use of the POMALYST® mark and sale and distribution of POMALYST® into the United States deceives the consumer into believing that they are purchasing genuine Celgene drugs.

32.     Defendant's unauthorized use of the POMALYST® mark as well as Defendant's sale and distribution of POMALYST® into the United States falsely suggests that Defendant and the POMALYST® product advertised, sold, and distributed by the Defendant are associated with or sponsored by Celgene.

33.     Defendant's use of the POMALYST® mark and sale and distribution of POMALYST® into the United States will likely result in consumer confusion in the marketplace with regards to the source and/or sponsorship of the POMALYST® product advertised, sold, and distributed by the Defendant.

34.     Defendant's continued use of the POMALYST® mark and sale and distribution of POMALYST® into the United States is undermining Celgene's brand identity and the positive public perception of Celgene's POMALYST® pharmaceutical product.  Celgene's goodwill is extremely valuable to Celgene and Defendant's actions are harming Celgene.

35.     Defendant's activities are likely to cause confusion or mistake among prospective consumers, and are likely to mislead and/or deceive prospective consumers with respect to the origin and quality of the POMALYST® sold by Defendant.

36.     Defendant's unauthorized use of Celgene's POMALYST® mark and sale and distribution of POMALYST® into the United States constitutes unfair competition.

37.     Defendant's distribution of unauthorized POMALYST® outside of the limited distribution channels creates serious health and safety concerns and exacerbates the likelihood that consumers will experience adverse health consequences when taking POMALYST®.

38.     In light of Defendant's use of POMALYST® and unauthorized sale and distribution of POMALYST® into the United States, where Celgene is currently the exclusive FDA-approved manufacturer of POMALYST®, consumers will associate negative health consequences resulting from Defendant's distribution of unauthorized POMALYST® with Celgene and Celgene's pharmaceutical products, which will irreparably damage the goodwill inherent in Celgene's POMALYST® marks and in Celgene's business reputation.

## COUNT I – TRADEMARK INFRINGEMENT

39.     Celgene repeats and re-alleges, and incorporates by reference, the foregoing paragraphs as though the same were fully set forth at length herein.

40.     The federal registrations of Celgene's POMALYST® marks evidences Celgene's exclusive right to use its POMALYST® marks in connection with pharmaceutical preparations,

7

namely, cytokine inhibitory drugs; and pharmaceutical preparations that modulate the immune system. 15 U.S.C. § 1115.

41.     The federal registrations for Celgene's POMALYST® marks conclusively evidence the validity of the registered marks, Celgene's ownership of marks, and Celgene's exclusive right to use the POMALYST® marks in commerce. 15 U.S.C. §§ 1065, 1115.

42.     The Defendant utilizes, without authorization, the POMALYST® mark in connection with the unauthorized sale of POMALYST®.

43.     The Defendant's use of POMALYST is identical in sound, meaning and appearance to Celgene's POMALYST® marks. The marks create the same commercial impression and are confusingly similar.

44.     The Defendant is marketing and distributing unauthorized POMALYST® using the name POMALYST® to consumers in the United States and Canada.

45.     The Defendant's adoption and use of the POMALYST® mark in connection with the sale of unauthorized POMALYST® is likely to cause confusion, or mistake, or to deceive as to the source, affiliation, or sponsorship with Celgene's POMALYST® marks in violation of 15 U.S.C. § 1051 et seq., specifically §§ 1114-18.

46.     This unauthorized use by the Defendant constitutes infringement of Celgene's registered marks, described above, in violation of 15 U.S.C. § 1051 et seq., to the substantial and irreparable injury of the public and of Celgene's marks, business reputation, and goodwill.

47.     The activities of the Defendant complained of herein constitute willful and intentional infringement of Celgene's federally registered POMALYST® marks, in derogation of Celgene's rights in violation of 15 U.S.C. §§ 1114-18. Acts of infringement commenced and have continued in spite of the Defendant's knowledge that the use of Celgene's POMALYST® mark was and is in contravention of Celgene's rights.

48.     Celgene has not given the Defendant consent directly or indirectly to use the POMALYST® mark, or any mark similar thereto.

49.     The Defendant's conduct has caused and, if not enjoined, will continue to cause irreparable damage to the rights of Celgene in its marks and in its business, reputation, and goodwill.

50.     Celgene's damages from the aforesaid unlawful actions of the Defendant, to the extent ascertainable, have not yet been determined.

51.     Celgene seeks attorney's fees and costs given the willful conduct of the Defendant.

52.     Celgene seeks treble damages given the willful conduct of the Defendant.

## COUNT II – FEDERAL UNFAIR COMPETITION

53.     Celgene repeats and re-alleges, and incorporates by reference, the foregoing paragraphs as though the same were fully set forth at length herein.

54.     Celgene's POMALYST® marks are distinctive and have acquired secondary meaning and significance in the minds of the relevant public.

55.     The Defendant utilizes, without authorization, the POMALYST® mark in connection with the sale of unauthorized POMALYST®.

56.     The unauthorized POMALYST® drug offered for sale by the Defendant is not manufactured by Celgene, and no association or relationship exists between Celgene and the Defendant.

57.     Given the restricted distribution limitations provided in connection with the POMALYST® drug, any such unauthorized distribution could result in serious health consequences for consumers and could have catastrophic affects.

58.     Celgene has not given consent directly or indirectly to the Defendant to use its POMALYST® mark, or any mark similar thereto.

59.     The Defendant's activities are likely to cause confusion, or to cause mistake, or to deceive, causing great harm to Celgene's reputation and goodwill.

60.     The Defendant has unfairly competed with Celgene in interstate commerce and in this district by various acts, including marketing, offering for sale, and selling unauthorized POMALYST® under the POMALYST® designation, and by selling unauthorized POMALYST® outside the restricted distribution programs and in violation of required health and safety guidelines.  This unauthorized use by the Defendant constitutes unfair competition to the substantial and irreparable injury of the public and of Celgene's marks, business reputation, and goodwill. 15 U.S.C. § 1125.

61.     The activities of the Defendant complained of herein constitute willful and intentional tort, in derogation of Celgene's rights.  Acts of unfair competition commenced and have continued in spite of the Defendant's knowledge that the use of Celgene's POMALYST® mark was and is in contravention of Celgene's rights.

62.     The Defendant's conduct has caused and, if not enjoined, will continue to cause irreparable damage to the rights of Celgene in its marks and in its business, reputation, and goodwill.

63.     Celgene's damages from the aforesaid unlawful actions of the Defendant, to the extent ascertainable, have not yet been determined.

64.     Celgene seeks attorney's fees and costs given the willful conduct of the Defendant.

65.     Celgene seeks treble damages given the willful conduct of the Defendant.

## COUNT III – FALSE DESIGNATION OF ORIGIN

66.     Celgene repeats and re-alleges, and incorporates by reference, the foregoing paragraphs as though the same were fully set forth at length herein.

67.     This cause of action is for false designation of origin pursuant to 15 U.S.C. § 1125 *et seq.*

68.     Celgene's POMALYST® marks are distinctive and have acquired secondary meaning and significance in the minds of the relevant public.

69.     The Defendant utilizes, without authorization, the POMALYST® mark in connection with the sale of unauthorized POMALYST®.

70.     The unauthorized POMALYST® drug offered for sale by the Defendant is not manufactured by Celgene, and no association or relationship exists between Celgene and the Defendant.

71.     Given the restricted distribution limitations provided in connection with the POMALYST® drug, any such unauthorized distribution could result in serious health consequences for consumers and could have catastrophic affects.

72.     Given the serious health and safety issues inherent in taking the POMALYST®, drug, any such unauthorized distribution could result in serious health consequences for consumers and could have catastrophic affects.

73.     Celgene has not given the Defendant consent directly or indirectly to use its POMALYST® mark, or any marks similar thereto.

74.     The Defendant's adoption and use of the POMALYST® mark is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of the Defendant with Celgene, and Celgene is likely to be damaged by such actions.  Accordingly, such conduct constitutes false designation of origin under Section 43(a) of the Lanham Act.

75.     The Defendant has caused confusion in interstate commerce and in this district by various acts, including marketing, offering for sale, and selling unauthorized POMALYST® under the POMALYST® designation and by selling unauthorized POMALYST® outside the restricted distribution programs and in violation of required health and safety guidelines.

76.     The Defendant had knowledge of the falsity of the designation of origin in that they knew, among other things, of Celgene's reputation and good will developed through Celgene in its POMALYST® mark.

77.     These actions of the Defendant are likely to confuse, mislead, and deceive members of the public as to the origin or sponsorship of the Defendant and Celgene in violation of 15 U.S.C. § 1125(a).

78.     The aforementioned activities by the Defendant constitute unfair competition and unfair trade practices, and are likely to cause confusion, mistake, or deception in violation of 15 U.S.C. § 1125(a).

79.     The Defendant's conduct described above has caused and, if not enjoined, will continue to cause irreparable damage to the intellectual property rights of Celgene, and its business, reputation and goodwill.

80.     Celgene's damages from the aforesaid unlawful actions of the Defendant, to the extent ascertainable, have not yet been determined.

81.     Celgene seeks attorney's fees and costs given the willful conduct of the Defendant.

82.     Celgene seeks treble damages given the willful conduct of the Defendant.

**COUNT IV – VIOLATION OF NEW JERSEY DECEPTIVE TRADE PRACTICES ACT**

83.     Celgene repeats and re-alleges, and incorporates by reference, the foregoing paragraphs as though the same were fully set forth at length herein.

84.     The Defendant has practiced deceptive business and trade practices in this district by various acts, including marketing, offering for sale, and selling unauthorized POMALYST® under the POMALYST® designation and by selling unauthorized POMALYST® outside the restricted distribution programs and in violation of required health and safety guidelines.

85.     The Defendant' aforesaid conduct constitutes unfair, unlawful, and deceptive business and trade practices in violation of N.J. Stat. § 56:8-2.

86.     Many of these wrongful acts occurred in the State of New Jersey and harmed the New Jersey public at large.

87.     These wrongful acts have proximately caused and continue to cause Celgene substantial injury, including loss of customers, dilution of its goodwill, confusion of potential customers, injury to its reputation, and diminution in the value of its products and technology.  These actions will cause imminent irreparable harm and injury to Celgene, the amount of which will be difficult to ascertain, if they continue.

88.     Celgene is without an adequate remedy at law.

89.     Celgene is entitled to an injunction restraining the Defendant, and all persons or entities acting in concert with it, from engaging in further such unlawful and deceptive conduct.

90.     Celgene is entitled to recover from the Defendant the damages sustained by it as a result of the Defendant's wrongful acts as hereinabove alleged.  The amount of such damages cannot be determined at this time.

91.     Celgene is further entitled to recover from the Defendant the gains, profits, and advantages it has obtained as a result of their wrongful acts as hereinabove alleged. Celgene is at present unable to ascertain the full extent of these gains, profits, and advantages, but Celgene is informed and believes and based thereon alleges that the Defendant have obtained

13

such gains, profits, and advantages in an amount thus far undetermined, but in excess of $75,000.

92.     The conduct of the Defendant was and is fraudulent, oppressive, malicious, and in conscious disregard of the rights of Celgene, and Celgene is therefore entitled to punitive damages against the Defendant.

## PRAYERS FOR RELIEF

**WHEREFORE**, Celgene prays for relief against Defendant as follows:

(1)     That the Court preliminary and permanently enjoin and restrain Defendant, its officers, directors, agents, employees and all persons in active concert or participation with it who receives actual notice of the injunction, by personal service or otherwise, from doing, abiding, causing or abetting any of the following:

(a)     infringing, inducing or contributing to the infringement of Celgene's intellectual property;

(b)     engaging in any acts or activities directly or indirectly calculated to infringe the POMALYST® marks;

(c)     using in selling, offering for sale, promoting, advertising, marketing or distributing of press releases, articles, advertisements or marketing materials that infringe upon Celgene's rights;

(d)     using any designation, term, mark, slogan, logo, configuration or design that is confusingly similar to the POMALYST® marks;

(e)     engaging in any activity constituting unfair competition with Celgene; or

(f)     making or displaying any statement, representation, or depiction that is likely to lead the public or the trade to believe that (i) Defendant's goods are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Celgene or (ii) Celgene's goods are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Defendant.

(2)     That the Court find that the Defendant is infringing Celgene's POMALYST® marks, is falsely designating the origin of its goods, and is competing unfairly with Celgene.

(3)     That the Court Order the Defendant to deliver up to Celgene for destruction, at the Defendant's expense, all newsletters, articles, web site materials, literature, brochures, promotional materials, advertisements and other communications to the public in the possession

or under the control of the Defendant, and any other material or any representations that are or may contain designations similar to the POMALYST® marks.

(4)     That the Court Order Defendant to account for and to pay over to Celgene and all damages suffered by Celgene as a result of Defendant's unfair competition.

(5)     That the Court Order Defendant to account for and to pay over to Celgene and all damages suffered by Celgene as a result of Defendant's false designation of origin.

(6)     That the Court Order Defendant to account for and pay over to Celgene all profits received by Defendant from its unlawful acts, and for its deceptive trade practices, in an amount consisting of the gains, profits, and advantages Defendant has obtained as a result of its wrongful acts as hereinabove alleged, which damages will be proven with greater precision at trial.

(7)     That the Court Order Defendant to account for and pay over to Celgene all profits received by Defendant from its unlawful acts.

(8)     That the Court enter an order placing reasonable but effective restrictions on the future transactions and activities of Defendant so as to prevent fraud on the Court and so as to ensure the capacity of Defendant to pay, and the prompt payment of, any judgment entered against Defendant in this action.

(9)     That the Court award Celgene its compensatory, incidental, and consequential damages.

(10)     That the Court award Celgene enhanced, treble, and/or punitive damages.

(11)     That the Court award Celgene its reasonable attorney's fees and the costs of this action.

(12)     That the Court grant Celgene such other relief as is just and proper..

16

## DEMAND FOR JURY TRIAL

Celgene demands a trial by jury on all triable issues of fact.

Dated:  January 4, 2018

Respectfully submitted by:

COZEN O'CONNOR

/s/ Melanie A. Miller
Melanie A. Miller (MM 2992)
Cozen O'Connor
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, PA  19103
(215) 665-2714- Telephone
(215) 701-2414 – Facsimile
mmiller@cozen.com – E-Mail

and

Camille M. Miller (to be admitted pro hac vice)
J. Trevor Cloak (to be admitted pro hac vice)
Cozen O'Connor
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, PA  19103
(215) 665-7273 – Telephone
(215) 701- 2273 – Facsimile
cmiller@cozen.com – E-Mail
jcloak@cozen.com – E-Mail

*Attorneys for Plaintiff, Celgene Corporation*